**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Kubicek Architects & Associates, Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Bruce C. Bosley and Joanne M. Bosley, The Bosley Group Incorporated, Bashas' Incorporated,<br><br>Defendants. | No. CV-11-02112-PHX-DGC<br><br>**ORDER** |

Defendants Bruce C. Bosley, Joanne M. Bosley, and the Bosley Group, Inc. ("TBG") (collectively "Defendants" or "Bosley Defendants") move for summary judgment on the first, second, and third causes of action of Plaintiff's complaint, alleging direct copyright infringement, contributory copyright infringement, and vicarious liability for copyright infringement. Doc. 63. This Court previously severed the claims against Defendant Bashas' and referred them to the Bankruptcy Court. Doc. 26. The Court subsequently dismissed Plaintiff's federal RICO, state-law racketeering, and alter ego claims, making the above-listed claims against the Bosley Defendants the only remaining claims in this case. Doc. 57. Defendants' motion has been fully briefed. Docs. 74, 78.[1]

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

The severed claims against Defendant Bashas' were dismissed in part by the Bankruptcy Court, and the remaining claims have since been withdrawn from that court and are currently pending before Judge Frederick J. Martone. No 2:12-cv-01947-FJM. Plaintiff Robert Kubicek Architects & Associates, Incorporated ("RKAA") filed a second motion to consolidate, requesting consolidation of the pending claims against Bashas' with the claims in this case. Defendant Bashas' filed a response in opposition (Doc. 80), and the Bosley Defendants filed a response in opposition and joinder in Bashas' response. Doc. 81. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment in part, deny it in part, and deny Plaintiff's motion to consolidate.

**I.    Background.**

RKAA is an architectural firm located in Phoenix, Arizona. Doc. 1, ¶ 13. Defendant Bruce Bosley began working as a draftsman for RKAA in 1982, after which he became a licensed architect, became a minority shareholder, and served as President and a member of RKAA's board of directors. *Id.*, ¶ 14-15. On March 14, 2007, Mr. Bosley resigned from the firm without prior notice. *Id.*, ¶, 20.

From 1997 up to the time of his resignation, Mr. Bosley worked as the architect principally responsible for managing RKAA's work for Bashas' Inc., a major, long-term client of the firm. *Id.*, ¶¶ 22, 24-25. After leaving RKAA, Mr. Bosley formed his own architectural firm, TBG, and seven other RKAA employees who had worked on Bashas' projects left RKAA and began working for TBG. *Id.*, ¶¶ 27-30. Bashas' stopped sending new work to RKAA, and instead sent its work to TBG. *Id.*, ¶ 36. RKAA alleges that about the time Mr. Bosley left to start his own company, Defendants acquired copies of RKAA's copyrighted architectural drawings related to Bashas' projects and later unlawfully copied and used the drawings in providing services to Bashas'. *Id.*, ¶¶ 44-53.

**II.    Legal Standards.**

   **A.    Summary Judgment.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.    Copyright Act.**

Copyright protection applies to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a).  This includes "technical drawings, including architectural plans" and "architectural works." 17 U.S.C. § 102(a)(5) & (8), § 101 (defining works covered under § 102(a)(5)).  "An 'architectural work' is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." *Id.* at § 102(a)(8).  Such work "includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id.*

Registration of a copyrighted work is not required for copyright protection.  17 U.S.C. § 408(a).  Registration is, however, a prerequisite for bringing a civil action for copyright infringement. *Id.* at § 411(a).  The Ninth Circuit has found that the receipt of a completed application by the U.S. Copyright Office is sufficient for purposes of initiating litigation and that the processes of copyright registration and an underlying infringement case can proceed concurrently. *Cosmetic Ideas, Inc., v. IAC/Interactivecorp*, 606 F.3d 612, 619-21 (9th Cir. 2010).  Even rejection of a registration application does not bar a civil suit, as long as the Copyright Office has been notified of the litigation and served a

copy of the complaint. *Id.* at 619; 17 U.S.C. § 411(a). The Copyright Office may become party to the suit, but it is the court's responsibility to determine the validity of a plaintiff's copyright claim. 17 U.S.C. § 411(a).

To establish copyright infringement, a claimant must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A certificate of copyright registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). This presumption "is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 668 (3d Cir.1990. "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright." *Id.*

A work is "original" when it "possesses at least some minimal degree of creativity" and was "independently created by the author (as opposed to copied from other works)." *Feist*, 499 U.S. at 345. "The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." *Id.* at 348. Whether individual components of a work are sufficiently original to be protected is a question of fact. *See, e.g.*, *Vargas v. Pfizer, Inc*., 418 F.Supp.2d 369, 373 (S.D.N.Y. 2005) (finding a genuine dispute of fact over whether elements of a plaintiff's musical composition were sufficiently original to warrant copyright protection).

**III.    Defendants' Motion for Summary Judgment.**

    **A.    Relevant Copyright Materials and Acts of Copying.**

The Court must first determine whether RKAA has made claims based on the infringement of materials that it has either registered with the U.S. Copyright Office or for which it has applied to that office for copyright registration. RKAA has presented

evidence that it submitted registration applications for the following as "architectural works": (1) the grocery design for "Food City by Bashas' Store #141," (2) the grocery design for "a new Bashas' Market Store #166," (3) the architectural design for "Ike's Farmers Market by Bashas' Store #9," (4) the architectural design for "Ike's Farmers Market by Bashas' Store #125," (5) the technical specifications for grocery design, "Generic Specifications (Project Manual)," and (6) the technical specifications for grocery design, "Project Manual for a new Bashas' Market, Store #166." Doc. 75-2 at 2-6, Decl. of Harvey G. Unti, ¶¶ 7-12; *see* Doc. 75-2 at 8-24.

In addition to identifying the relevant works for which it has sought copyright registration, RKAA must point to evidence sufficient to create a triable issue of fact on whether Defendants copied these particular works. RKAA asserts that on several occasions after Mr. Bosley left RKAA he accessed the firm's computer system and forwarded emails to himself that, in some instances, had copies of RKAA drawings attached. Docs. 74 at 15; 75, ¶ 40. Neither the emails nor their attachments appear to pertain to any plans for which RKAA applied for copyright registration, however, and are therefore outside the scope of this lawsuit. 75-1 at 40-42.

RKAA also argues that a comparison of RKAA drawings and TBG drawings shows that portions of TBG's work "are essentially identical to, and have been appropriated from, digital files containing RKAA's plans, drawings, schedules, and design products." Doc. 74 at 15. RKAA cites to the declaration and report of its expert, Irwin G. Pasternack, who opined that works prepared by TBG for a number of Bashas' projects "appear to be direct appropriations and plagiarizations of RKAA work product in virtually every respect, with intentional cosmetic changes that appear to have been designed to change certain aspects of the physical appearance of the documents in order to disguise the misappropriations and plagiarisms." Doc. 75-6 at 4, ¶ 7(a).

As with the emails, Pasternack's report pertains, in part, to drawings other than those for which RKAA applied for copyright registration, and opinions based on these drawings are outside the scope of this lawsuit. Doc. 75-6 at 9-10. The report also

pertains, however, to drawings for stores 141 and 166, for which RKAA applied for copyright registration. Doc. 75-6 at 22. The report opines, for example, that details from RKAA #166 and Bosley #174 "prove that a direct copy of the RKAA source file was appropriated for Bosley use." Doc. 75-6 at 24. These and other assertions made by Pasternack related to stores 141 and 166 are sufficient to create a triable issue of fact on whether TBG copied from RKAA's relevant copyrighted works.

### B.      Originality.

Defendants argue that the designs at issue do not qualify as original architectural works, making their registrations invalid. Doc. 63 at 8. Defendants argue that an "architectural work" is defined as "the overall form as well as the arrangement and composition of spaces and elements in the design," and that the only details relating to the "overall form" of the stores at issue here are the storefront, which was designed by a firm other than RKAA, and the internal design for the layout of fixtures, which design has remained substantially the same for all grocery-stores since the 1980's and was part of the "public domain" before architectural works became copyrightable in 1990. *Id.* at 9-10.

Defendant also argues that in both 2001 and 2003 Bashas' own construction department prepared a Master Set of Floor and Fixture Plans that have served as the basis for all subsequent plans and drawings RKAA has prepared for Bashas'. *Id.* at 10-11. Defendants assert, therefore, that the overall form and design of the stores for which RKAA claims a copyright is, at most, derivative from Bashas' own work, and only Bashas' has a right to prepare derivative works from its existing work. *Id.* at 11; 17 U.S.C. § 106(2) ("the owner of copyright under this title has the exclusive rights to do and authorize . . . [preparation of] derivative works based upon the copyrighted work").

RKAA argues in response that the fact that grocery store layouts have remained substantially unchanged for decades does not divest its plans for individual Bashas' stores of originality because such a finding would ignore "the original thought and creativity by the architect that is inherent in integrating each necessary element into a suitable design

that reflects the desires of each customer, satisfies the site constraints and meets the building codes specific to each structure." Doc. 74 at 6.  As to Defendants' assertion that the interior layout of the stores is merely derivative of Bashas' own designs, RKAA maintains that Bashas' itself relied on designs prepared for it by RKAA, and the only difference between Bashas' master plans and RKAA's earlier version of them is that the title block was changed.  Docs. 74 at 7, 75, ¶ 21.  RKAA points to Exhibit F of Robert W. Kubicek's declaration, which it maintains depicts the drawings RKAA prepared as the basis for Bashas' plans, thus showing that RKAA, not Bashas', is the originator of any internal layout designs.  Doc. 75-1 at 29.

Viewing the evidence in a light most favorable to RKAA, the Court concludes that RKAA has raised a genuine issue of material fact on whether the overall layout and designs it alleges Defendants appropriated for their own use contain sufficient original elements created by RKAA to be entitled to copyright protection.  The standard for originality is not particularly demanding.  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345.  Whether RKAA's designs are original or largely the same as the basic design of all grocery stores, and whether the layout of the stores must, in any case, be attributed to Bashas' construction department and not to RKAA, are factual issues the Court cannot resolve at the summary judgment stage.

**C.     Did RKAA Transfer or Waive its Copyright Rights?**

Defendants argue that the relevant copyright materials do not actually belong to RKAA, but to Bashas', or that RKAA granted Bashas' a license to use its plans and drawings through years of conduct that estops it from claiming infringement.  Doc. 63 at 5-8.  Defendants point to the affidavit of Mr. Bosley that over RKAA's more than 20-year working relationship with Bashas', Bashas' kept plans, drawings, and other documents related to its projects both at RKAA and at its own offices, and that RKAA freely provided Bashas' with "any project file or material it wanted to use in whatever

way it wanted." Doc. 64-1, ¶ 9. Mr. Bosley states that during his time as President of RKAA, he engaged in discussions with Bashas' Vice President of construction and maintenance, Rick Hamm, and readily agreed that Bashas' effectively owned the plans RKAA had prepared for it, and that on two occasions in 2002 and 2005, Bashas' paid RKAA to compile and make copies of all of its project materials. *Id.*, ¶¶ 11, 12. Mr. Bosley also states that RKAA released plans to other architects for use on Bashas' projects in which RKAA was not involved. *Id.*, ¶¶ 12-13. This extended to TBG after Mr. Bosley resigned when, Defendants argue, RKAA allowed TBG to complete two or three time-critical projects for Bashas' using files RKAA released. *Id.*, ¶ 14; *see* Dep. of Richard Hamm, Doc. 75-3 at 7: 2-19.

RKAA does not deny that it provided copies of its plans to Bashas' over the years or that it permitted Bashas' or other architects to use its plans on particular projects. RKAA instead argues that the right to possess copies of an original work or to use those works for limited purposes does not transfer ownership of the copyright – the exclusive right to control their reproduction and distribution. Doc. 74 at 10-12; *see* 17 U.S.C. § 106. RKAA argues that unlike granting someone permission to own or use copies of an original work, a transfer of copyright ownership requires a signed instrument from the copyright owner. 17 U.S.C. § 204(a). Defendants have produced no evidence of a signed transfer of copyright ownership in this case. Doc. 74 at 11.

RKAA argues that it did not give Bashas' a license to use its plans at any time in any way it wanted, thereby waiving its right to assert any copyright infringement claims. RKAA points to Mr. Hamm's deposition testimony that when a need arose for Bashas' to use RKAA's drawings, Hamm would convey "[j]ust that . . . we would like to have those released for specific reasons. They weren't – it wasn't cart blanch, it wasn't everything. There were certain needs that we needed to have those released. And my conversation would have gone to Bruce, Mr. Bosley, and they would have requested what those needs were and why." Doc. 75-3, Dep. of Richard Hamm, Doc. 75-3 at 5:3-8. RKAA acknowledges that it released drawings to TBG for the purpose of completing particular

Bashas' projects, but argues that it did so only provisionally and that the releases, and Mr. Hamm's testimony about them, show that this permission was only with respect to particular drawings and for a particular purpose. Doc. 74 at 10-11.

The Court concludes that the course of conduct and verbal agreements cited by Defendants are not sufficient to show that RKAA transferred the copyright ownership of any of its works to Bashas' in accordance with the requirements of 17 U.S.C. § 204(a). RKAA has raised an issue of material fact about the extent to which it granted Bashas' a license to use its drawings for work by other architects on other Bashas' projects. Whether RKAA's permission extended to TBG's use of the particular architectural works allegedly copied by Defendants in this case is an issue of fact to be resolved at trial.

**D.     Specific Claims.**

RKAA states three separate types of claims: direct and contributory infringement against all Defendants and vicarious liability against Mr. Bosley. Doc. 1, ¶¶ 66-82. To the extent Defendants make additional arguments respecting these claims, the Court will address them below.

**1.     Direct Infringement Against Mr. Bosley.**

Defendants argue that RKAA's claim of direct infringement against Mr. Bosley fails because RKAA has pointed to no evidence showing that Mr. Bosley copied or made use of the copyrighted materials at issue in this case. Doc. 63 at 11-12; citing *Costar Group, Inc. v. Loopnet, Inc.,* 373 F.3d 544, 549 (4th Cir. 2004) ("While the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights, it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement.") (emphasis in original); *see also Perfect 10, Inc. v. Megaupload Ltd.*, No. 11cv0191—IEG (BLM). 2011 WL 3203117, at *4 (S.D. Cal. July 27, 2011) ("an important element of direct liability is volitional conduct.")

The Court agrees that RKAA has failed to present evidence that Mr. Bosley engaged in direct copyright infringement. RKAA has not pointed to any evidence that

Mr. Bosley either personally copied or obtained relevant protected materials after he resigned from RKAA, or that he authored or contributed to the TBG drawings and plans that purportedly infringe on those materials. As previously discussed, the emails Mr. Bosley allegedly forwarded to himself from RKAA's computer system do not refer to the relevant documents for copyright infringement in this case. RKAA does not allege any additional overt acts from which a reasonable jury could conclude that Mr. Bosley directly infringed RKAA's copyright rights. The Court will grant summary judgment to Defendants on RKAA's direct copyright infringement claim against Mr. Bosley.

### 2. Contributory Infringement Against Mr. Bosley and TBG.

"[A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10*, 2011 WL 3203117, at *5. Defendants argue that the contributory infringement claim against Mr. Bosley fails because RKAA presents no evidence that TBG engaged in direct infringement and, even if it did, there is no evidence that Mr. Bosley had knowledge of the infringement or did anything to induce, cause, or contribute to the infringement. Doc. 63 at 13 14.

For the reasons already discussed, the Court does not agree that RKAA has failed to produce evidence from which a reasonable jury could conclude that TBG engaged in direct copyright infringement. The Court also finds that RKAA has presented sufficient evidence to create an issue of fact that Mr. Bosley knew of and contributed in some way to TBG's alleged infringement. The Pasternack Declaration, referred to above, states that, given Mr. Bosley's years of "experience in overseeing the architectural work done by RKAA for Bashas', it is . . . highly unlikely that Mr. Bosley would have failed to recognize the extensive misappropriation and plagiarization of earlier RKAA work he had supervised incorporated into the TBG work product I have reviewed." Doc. 75-6 at 5, ¶ 8. Drawing all reasonable inferences in favor of RKAA, this evidence is sufficient to create an issue of fact on whether Mr. Bosley knew of and failed to interfere with – and thus arguably contributed to – TBG's alleged infringing conduct. The Court will deny

summary judgment to Defendants' on this claim.

Defendants argue that RKAA's claim of contributory infringement against TBG fails because it is premised on allegations that Bashas' engaged in direct infringement, and RKAA has presented no evidence of direct infringement by Bashas'. Doc. 63 at 13. The Court agrees that the evidence upon which RKAA relies to show that TBG infringed on its past work pertains solely to plans prepared for Bashas' by TBG, and RKAA presents no evidence that Bashas' either copied the relevant plans without permission or was involved in the creation of the TBG plans that purportedly copied from them. To the extent that the contributory infringement claim against TBG is predicated on its own alleged infringement, this claim is subsumed in the direct infringement claim. The Court will grant summary judgment to Defendants on RKAA's contributory infringement claim against TBG.

### 3. Vicarious Liability of Mr. Bosley.

Vicarious liability for copyright infringement arises where "the right and ability to supervise" the conduct of the infringer coalesces with "an obvious and direct financial interest in the exploitation of copyrighted materials." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2nd Cir. 1963); *see Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996) (following *Shapiro* as the landmark case on vicarious copyright liability). This is so whether or not the superior has actual knowledge of the infringement. *Shapiro*, 316 F.2d at 307.

Defendants argue that RKAA's claim of vicarious liability against Mr. Bosley fails as to TBG because Mr. Bosley has no direct financial interest in any of TBG's employees committing an infringement. The Court does not agree. Drawing all inferences in favor of RKAA, the Court finds that Mr. Bosley as owner and founder of TBG had a direct financial interest in TBG securing and retaining Bashas' as a client. Because TBG's alleged use of copyrighted materials is directly related to work it performed on Bashas' behalf, Mr. Bosley's financial interest in allegedly exploiting these materials is both obvious and direct. The Court will deny summary judgment to Defendants on RKAA's

claim of vicarious copyright infringement against Mr. Bosley.

### 4. Summary of Claims.

In sum, the Court finds that RKAA has pointed to insufficient evidence to support its claims of direct copyright infringement against Mr. Bosley and contributory copyright infringement against TBG. The Court will grant Defendants motion for summary judgment as to these claims. The Court finds that RKAA has presented sufficient evidence to support its claims of direct copyright infringement against TBG, and contributory and vicarious copyright infringement against Mr. Bosley. Accordingly, the Court will deny Defendant's motion for summary judgment as to these claims.

### E. Attorneys' Fees.

Defendants seek an award of attorneys' fees and renew their request for attorneys' fees associated with their motion for judgment on the pleadings. Doc. 63 at 16. As the Court previously found (Doc. 57 at 8), Defendants' request is premature. The Court will address attorneys' fees after this case is resolved.

## IV. Motion to Consolidate.

RKAA has filed a second motion to consolidate its claims against Bashas' (No 2:12-cv-01947-FJM) with the claims in this case. Doc. 79. The Court denied RKAA's previous motion to consolidate as premature because the only matter pending in the Bashas' case at that time was RKAA's motion to withdraw the reference from the Bankruptcy Court. *See* Doc. 69 at 1. RKAA argues that now that Judge Martone has ruled on that motion and withdrawn the reference, its motion to consolidate is ripe. Doc. 79 at 7. RKAA argues that its claims against the Bosley Defendants and Bashas' are deeply interconnected, and consolidation is proper to avoid duplicative discovery efforts and potentially inconsistent rulings in parallel cases. *Id.* at 8-9.

The Court continues to find that consolidation is inappropriate. Even though both actions are currently pending, they are at opposite stages of litigation. Discovery in this action ended on July 27, 2012; summary judgment briefing became final on October 29, 2010; and, with the entry of this order, the case is now ready for trial. By contrast, the

Bashas' action is only in its beginning stages, and the extent of triable claims in that case is as yet unknown. The Bankruptcy Court dismissed RKAA's pre-petition claims (Doc. 79-1 at 1-2), and RKAA has filed a notice of appeal (Doc. 81 at 2-3). Bashas' attests that it intends to move to dismiss RKAA's remaining claims. Doc. 80 at 6. Thus, whether and to what extent RKAA will have any claims against Bashas' suitable for consolidation with this case depends on outcomes yet to be determined.

As the Court has previously noted, this is the fourth action RKAA has filed against the Bosley Defendants. *See* Docs. 57 at 1; 81 at 1-2. The Bosley Defendants have been litigating these cases for nearly four years and the instant case for over one year. Doc. 81 at 2. Consolidation at this stage would require Defendants to await discovery and the resolution of outstanding issues and dispositive motions in the Bashas' action before bringing this case to final resolution. Because this would create substantial inconvenience and delay, the Court will deny the motion. *See, e.g., Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761-62 (5th Cir. 1989) (finding consolidation proper "when two or more district court cases involve common questions of law and fact and the district judge finds that consolidation would avoid unnecessary costs or delay[,]" but that it "may properly be denied in instances where the cases are at different stages of preparedness for trial.").

**IT IS ORDERED**:

1. Defendants' motion for summary judgment (Doc. 63) is **granted in part** and **denied in part** as set forth in this order.

2. Plaintiffs' second motion to consolidate (Doc. 79) is **denied**.

3. The Court will set a final pretrial conference by separate order.

Dated this 14th day of December, 2012.

_____
David G. Campbell
United States District Judge